IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| KAREN HUYCK, | Case No. 3:18-cv-00400-JR |
| Plaintiff, | ORDER |
| v. | |
| SHERRIE SHILLING-DEVANEY, an individual; and SHERRIE'S JEWELRY BOX, INC., an Oregon corporation; | |
| Defendants. | |

RUSSO, Magistrate Judge:

Plaintiff Karen Huyck initiated this wage-and-hour action against defendants Sherrie Shilling-Devaney and Sherrie's Jewelry Box, Inc. The case proceeded to trial and a jury verdict was rendered in plaintiff's favor on her Second, Fourth, and Fifth Causes of Action. Plaintiff was awarded $24,217.10 in damages, inclusive of prejudgment interest. Plaintiff now moves for an award of $230,038.05[1] in attorney fees, $789.19 in nontaxable expenses, and $4,222.41 in costs. For the reasons set forth below, attorney fees are awarded in the reduced sum of $115,730, and costs and nontaxable expenses are awarded in full.

---

[1] This amount does not include the additional 13.4 hours of attorney time plaintiff is seeking in association with the filing of her reply brief.

Page 1 – ORDER

## STANDARD

Pursuant to the prevailing party's motion, the court may award reasonable attorney fees and costs. Fed. R. Civ. P. 54(d); LR 54. In determining a reasonable attorney fee, the court employs the lodestar method by first multiplying "the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate." *Morales v. City of San Rafael*, 96 F.3d 359, 363 (9th Cir. 1996) (as amended). The court then considers whether it is necessary to adjust the presumptively reasonable lodestar figure in light of the twelve factors articulated in *Kerr v. Screen Guild Extras, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975). *Id.*

The court is required to ensure an award's reasonableness, irrespective of any opposition from the non-prevailing party. *Gates v. Deukmejian*, 987 F.2d 1392, 1400-02 (9th Cir. 1992). "[C]onsiderable discretion [is vested in the court] in determining what attorney's fee is reasonable." *Webb v. Ada Cnty., Idaho*, 195 F.3d 524, 526-27 (9th Cir. 1999).

## DISCUSSION

It is undisputed that plaintiff is the prevailing party and therefore entitled to attorney fees and costs pursuant to both federal and state law. *See, e.g.*, 29 U.S.C. § 216(b); Or. Rev. Stat. §§ 652.200, 652.615, 653.055(4).[2]

---

[2] Attorney fees for successful overtime and wrongful-deduction claims, respectively, are discretionary and governed by the factors set forth in Or. Rev. Stat. § 20.075. However, plaintiff maintains, and defendants do not dispute, that "fees need not be apportioned [if there are common issues between claims] because the party entitled to fees would have incurred roughly the same amount of fees irrespective of the additional claim or claims." Pl.'s Mot. Att'y Fees 10 (doc. 108). Furthermore, Oregon courts have accepted and applied the lodestar method to Or. Rev. Stat. § 20.075. *See, e.g.*, *Strawn v. Farmers Ins. Co. of Or.*, 353 Or. 210, 221 n.7, 297 P.3d 439 (2013); *see also Graham v. Forever Young Or.*, 2014 WL 4472702, *3 (D. Or. Sept 10, 2014) ("[t]he *Johnson–Kerr* factors are similar to those the Oregon legislature has directed courts to consider [under Or. Rev. Stat. § 20.075] in determining whether to award attorneys' fees, and if so, in what amount"). The Court declines to engage in any attenuated analysis under Or. Rev. Stat. § 20.075 but notes that the application of those factors does not dictate a different result.

Page 2 – ORDER

I.     **Attorney Fees**

Plaintiff seeks compensation for the following: 275.5 hours for Lake Oswego, Oregon, attorney Jon Egan, at a rate of $547 per hour; and 44.4 hours for paralegal Michèle Lauzier, at a rate of $225 per hour. Egan Decl. ¶¶ 5, 12-13 (doc. 109); Pl.'s Reply to Mot. Att'y Fees 14-15 (doc. 120). That is, plaintiff requests attorney fees in the amount of $160,688.50, enhanced by a multiplier of 1.5.

Defendants oppose plaintiff's motion of the grounds that Egan and Lauzier's rates are "unrealistically high," and common defects appear in Egan's billing statement (including block-billing and vague, duplicative, and clerical entries). Defs.' Resp. to Mot. Att'y Fees 4-9 (doc. 112). Additionally, defendants contend a multiplier is "unreasonable" because "[t]his is not a case involving class certification [or] unwarranted litigation tactics," and "all 12 of the *Johnson-Kerr* factors do not apply or at best, are neutral." *Id.* at 2.

A.     **Reasonableness of the Requested Rates**

A reasonable rate for legal services is "calculated according to the prevailing market rates in the relevant community." *McElmurry v. U.S. Bank Nat'l Ass'n*, 2008 WL 1925119, *3 (D. Or. Apr. 30, 2008) (quoting *Blum v. Stenson*, 465 U.S. 886, 895 (1984)). "This District considers the most recent Oregon State Bar Economic Survey" – i.e. the 2017 Oregon State Economic Survey ("2017 OSB Survey") – as its 'initial benchmark' in determining whether hourly billing rates are reasonable." *Prison Legal News v. Umatilla Cnty.*, 2013 WL 2156471, *4 (D. Or. May 16, 2013) (citations omitted). "If the rate requested exceeds the average rate reported in the OSB Survey, the burden is on the prevailing party to justify that higher rate." *Id.* (citation omitted).

Egan has 22 years of legal experience and specializes in representing employees pursuing wage-and-hour claims. Egan Decl. ¶¶ 7-9 (doc. 109). The relevant Portland area hourly rates are as follows:

| Measure | Mean | Median | 75th % | 95th % |
|---|---|---|---|---|
| Years of Experience: 21-30 | $394 | $415 | $475 | $525 |
| Practice Area: Civil Litigation (Plaintiff) | $312 | $300 | $350 | $500 |

*2017 OSB Survey* 38-39, 41.[3]

The rate sought by plaintiff's counsel is significantly higher than average for attorneys with commensurate experience and/or a similar practice area. In fact, plaintiff's rate well exceeds the 95th percentile. In order to justify this higher rate, plaintiff submitted declarations from Egan and local attorney and fellow wage-and-hour specialist David Schuck, expounding upon counsel's expertise in the area of employee litigation, and opining that Egan's hourly rate is comparable to those of similarly specialized attorneys with equivalent experience. Egan Decl. ¶¶ 3, 5-10 (doc. 109); Schuck Decl. ¶¶ 18-20 (doc. 110).

Despite this evidence, the Court finds that plaintiff failed to adequately justify the entire extent of counsel's increased rates. The Court acknowledges that plaintiff's attorney has significant experience and has been recognized for his "unique expertise in the area of wage-and-hour litigation." *Wright v. Soniq Servs., Inc.*, 2018 WL 4997678, *3 (D. Or. Aug. 16), *adopted by* 2018 WL 4996574 (D. Or. Oct. 15, 2018). Regardless, as defendants denote, plaintiff did not prevail on

---

[3] As an initial matter, plaintiff asserts that these figures should be upwardly adjusted to account for inflation. While, as addressed below, the lapse in time between the latest OSB Survey and this case does partially support an increased rate, the Court declines to rely on the U.S. Bureau of Labor Statistics Consumer Price Index Inflation Calculator given the current unprecedented rate of inflation. *Compare* Pl.'s Mot. Att'y Fees 7 n.1 (doc. 108) (denoting that the consumer price index "rose a total of 21.1% from December 2016 through May 2022"), *with Topness v. Cascadia Behav. Healthcare*, 2018 WL 1015536, *4 n.4 (D. Or. Feb 22, 2018) (acknowledging annual consumer price index increases of between 0.7% and 2.1% from 2012 through 2016).

Page 4 – ORDER

her two summary judgment motions, trial lasted "less than 1.5 days," and "[t]he contested issue was not complex" – indeed, "[t]he issues did not require extensive research into new areas" and, "[a]t trial, there were two witnesses for the Plaintiff and three for the Defense." Defs.' Resp. 8-9 (doc. 112); Lindsey Decl. ¶¶ 8, 10 (doc. 113). In light of these circumstances, the Court finds that rates in excess of the 95th percentile are unreasonable. The median and mean rates are nonetheless inadequate given plaintiff's counsel's specialization and experience, which certainly factored into the results obtained at trial, irrespective of the simplicity of the issues presented. *See Topness*, 2018 WL 1015536 at *3-4 (collecting cases recognizing that rates in excess of the 75th percentile may be appropriate based on "the practitioners' significant experience in their particular practice").

Accordingly, the Court finds that an hourly rate between the 75th and 95th percentile is justified, especially given that the last OSB Survey was authored over five years ago.[4] *See id.* at *1 ("higher rates [than the OSB benchmark may awarded] based on inflation"); *see also Wright*, 2018 WL 4997678 at *3 (awarding Egan a rate of $400 in 2018 – i.e., $35 less per hour than his requested rate – in a wage case that settled prior to summary judgment, consistent with the 75th percentile of the 2017 OSB Survey for his then-current years of experience); *Knowledge Learning Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 2011 WL 2133824, *5 (D. Or. Apr. 18), *adopted by* 2011 WL 2115631 (D. Or. May 27, 2011) (awarding the median rate to specialized litigators in a case decided at summary judgment where the case was insufficiently complex to "justi[fy] the highest end of hourly rates"). Therefore, plaintiff's attorney is entitled to hourly compensation in the amount of $500.

---

[4] Plaintiff cites to three recent cases from the District in support of the proposition that an award of at least $505 per hour is warranted. Pl.'s Mot. Att'y Fees 8 (doc. 108). Yet these cases all concerned class action settlement approvals, where counsel was ultimately awarded fees as a percentage of the common fund. And, in two of the three cases, this resulted in the court compensating Egan at a fraction of his typical hourly rate.

Page 5 – ORDER

As to Lauzier, the Court finds $200 per hour to be reasonable. Initially, the Court denotes that, up until January 2022, Egan billed $205 per hour for Lauzier's services. Egan Decl. ¶ 5 (doc. 109). Further, although paralegal rates are generally considered reasonable where they do not exceed the average rate for a first-year associate, here the bulk of the work Lauzier performed was at the outset of this case or preparing exhibits and notations for a brief trial. *Id.* at ¶ 13. Under analogous circumstances, courts have awarded a reduced rate. *See Wright*, 2018 WL 4997678 at *3 (awarding Lauzier $140 per hour in 2018 – i.e., $55 less than her requested hourly rate – where she "performed work related to the preparation, finalizing, and filing of documents; correspondence related to the transportation and delivery of documents; email and document review; preparation of internal memoranda; and data entry").

B.   **Reasonableness of the Hours Expended**

Although the hours requested are, for the most part, reasonable, there are some key defects in Egan's billing statement that warrant reductions. *See Prison Legal News*, 2013 WL 2156471 at *7 (even where "the expended time is reasonable, the court may still reduce the fee award for defects in the plaintiff's motion for fees").

Namely, several of counsel's billing entries include block billing and inadequately described tasks. For instance, in three undated entries, Egan billed 40.3 for "[r]ead[ing] 592 incoming emails," 44.1 hours for "[p]repar[ing] 430 outgoing emails," and 7.1 hours for "91 Phone calls." Egan Decl. ¶ 12 (doc. 109). While the Court acknowledges that Egan elected to provide "summaries, grouped by relevant topic and compiled from contemporaneous records," in lieu of specific task-based entries by date, this billing practice makes it unfeasible to assess the reasonableness of the requested hours, or whether they were excessive, duplicative, or even

Page 6 – ORDER

necessarily related to the underlying litigation.[5] Pl.'s Reply to Mot. Att'y Fee 7 (doc. 120); *see also Old W. Fed. Credit Union v. Skillman*, 2012 WL 4594256, *4 (D. Or. Sept. 6), *adopted by* 2012 WL 4590080 (D. Or. Oct. 1, 2012) ("[t]his District has specifically cautioned against block billing"); *Prison Legal News*, 2013 WL 2156471 at *8 ("[a] court may disallow hours dedicated to inadequately specified tasks because failing to provide such information makes it nearly impossible to ascertain the reasonableness of the time requested") (citation omitted).

Plaintiff's block-billed entries that are wholly lacking specifics are reduced by 50%. Where the Court could discern the task and the reasonableness of at least some of the time requested, plaintiff's block-billed entries have been reduced by 10% (with the exception of the entries related to trial). The Court thus discounts 50.6 hours of Egan's time. Contrary to defendants' assertions, the Court does not otherwise find Egan and Lauzier impermissibly duplicated their efforts, or that Egan billed for routine clerical tasks.

However, the additional 13.4 hours sought in conjunction with plaintiff's reply are excessive. In so finding, the Court acknowledges that the parties engaged in a dispute concerning whether defendants should have to produce unredacted billing statements (on which plaintiff prevailed). Yet defendant's billing statements ultimately did not materially advance plaintiff's position, in that the Court would have reached the same conclusion concerning the reasonableness of the hours requested irrespective this evidence. Plaintiff billed 2.2 hours for her initial motion

---

[5] Indeed, approximately half of Egan's hours are block-billed in a manner that deprives the Court of engaging an any meaningful review. In his reply brief, Egan offers for the first time to provide "a day-by-day breakdown of when each task was performed." Pl.'s Reply to Mot. Att'y Fee 7 (doc. 120). Given the extensive briefing that has already occurred, coupled with the fact that Egan seeks thousands of additional dollars for responding to defendants' opposition, the Court does not find the submission of supplemental time records would be either helpful or economical at this juncture.

and the Court finds an equivalent amount proper compensation in association with the reply. Egan Decl. ¶ 12 (doc. 109).

Considering the above-listed deductions, the Court awards 213.7 hours of Egan's time (i.e., 275.5 requested hours less 61.8) at $500 per hour ($106,850 total), and 44.4 hours of Lauzier's time at $200 per hour ($8,880 total). Based on these calculations, the Court finds a total attorney fee award of $115,730 presumptively reasonable.

**C.    Multiplier**

The Court has considered the factors outlined in *Kerr* and Or. Rev. Stat. § 20.075, and concludes that no additional adjustment is necessary. Even in plaintiff's own estimation, the majority of the underlying factors are neutral, with only "the nature and length of the professional relationship with the client," "time limitations imposed by the client or the circumstances," and the fact that counsel's fee was contingent clearly supporting a positive multiplier. Pl.'s Mot. Att'y Fees 11-14 (doc. 108). In contrast, plaintiff did not succeed at summary judgment or prevail on all of her claims at trial, she obtained approximately half of the sought-after monetary relief, and her damages represent approximately 10% of Egan's attorney fees.

Thus, the amount involved and result obtained, when weighed on balance against any other applicable factors, counsel against a positive multiplier. In fact, plaintiff has not cited to any precedent authorizing a multiplier outside of the context of class actions or bad faith insurance claims, both of which involve special considerations not applicable here. Cf. *Updike v. Multnomah Cnty.*, 2020 WL 4736461, *4 (D. Or. Aug 14, 2020) ("[a]lthough multipliers may be somewhat more common in Oregon state court or in federal court when state law governs, the Ninth Circuit has stated that in federal court when awarding fees for successful federal claims, a multiplier

Page 8 – ORDER

adjustment requires rare and exceptional circumstances and must be supported by both specific evidence on the record") (citation and internal quotations omitted).

## II.    Costs

Plaintiff seeks to recover $4,222.41 in costs for filing, service, transcript, printing, exemplification, and docket fees. Bill of Costs 1 (doc. 107). Defendants only object to the $51 and $199 charges associated with Columbia Bank and OnPoint Credit Union, respectively, because these records "pre-date the litigation time period" and were not used at trial. Defs.' Resp. to Mot. Att'y Fees 3 (doc. 112).

Costs are generally awarded to the prevailing party in a civil action as a matter of course. Fed. R. Civ. P. 54(d). The expenses which may be taxed as costs are enumerated in 28 U.S.C. § 1920 and include the requested fees. Crawford Fitting Co. v. J.T. Gibbons, Inc., 482 U.S. 437, 441-42 (1987). In regard to defendants' limited objection, plaintiff represents "it was necessary to obtain these records before the litigation in order to find out how much plaintiff was paid and when (because defendants did not issue pay stubs as required by law)" and "information from the bank records was aggregated into Exhibit 1 at trial, and check images from those records were aggregated into Exhibit 2." Pl.'s Reply to Mot. Att'y Fees 2 (doc. 120). As such, there is no basis for the Court to disallow the $250 in fees arising out of plaintiff's bank records.

In sum, because they fall within the purview of 28 U.S.C. § 1920 and are properly documented within plaintiff's billing statement, the requested costs are awarded in full.

## III.    Nontaxable Expenses

In addition to the aforementioned costs, plaintiff seeks $789.19 in nontaxable expenses; this amount encompasses mileage, postage, research, and administrative office fees. Egan Decl. ¶

Page 9 – ORDER

11 (doc. 109). Defendants do not object to these expenses other than to note that they are overhead and not recoverable under 28 U.S.C. §1920.

Defendants misconstrue the nature of plaintiff's request. In wage-and-hour cases, nontaxable expenses are routinely awarded as attorney fees. *See* Mumford v. Eclectic Inst., Inc., 2016 WL 8711693, *8 (D. Or. Apr. 29, 2016) (reasonable attorney fees "[i]n an action under the FLSA . . . include reasonable out-of-pocket expenses [that go] beyond those normally allowed under Fed. R. Civ. P. 54(d) and 28 U.S.C. § 1920") (citation and internal quotations omitted); *see also* Robledo v. Orellana, 2012 WL 442122, *3 (D. Or. Feb. 10, 2012) (awarding nontaxable expenses for a successful wage claim, including postage, photocopying, phone, and computerized research fees). Moreover, as plaintiff observes, "the Oregon State Bar's FEE AGREEMENT COMPENDIUM, Form 2-1 (2018 ed), [sanctions] all of the expenses that defendants object to." Pl.'s Reply to Mot. Att'y Fees 3-4 (doc. 120). Accordingly, plaintiff is entitled to nontaxable expenses in association with her prevailing claims.

## CONCLUSION

Plaintiff's Motion for Attorney Fees and Nontaxable Expenses (doc. 108) is GRANTED in part and DENIED in part, in that plaintiff is awarded a total of $115,730 in attorney fees and $789.19 in nontaxable costs. Plaintiff's Bill of Costs (doc. 107) is GRANTED, such that costs are awarded in the amount of $4,222.41.

IT IS SO ORDERED.

DATED this 14th day of November, 2022.

                                        /s/ Jolie A. Russo
                                          Jolie A. Russo
                                United States Magistrate Judge